USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/30/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUSAN SHAHGHOLI,

                                        Plaintiff,

                        -v-

AETNA INC. LONG TERM DISABILITY BENEFITS
PLAN,

                                        Defendant.

---

17 Civ. 963 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Susan Shahgholi alleges that defendant Aetna Inc. Long-Term Disability

Benefits Plan (the "Plan") improperly denied her claim for long-term disability benefits, in

violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§ 1001 *et seq.* Shahgholi applied for, and now seeks to recover, benefits for subjective tinnitus

and hearing loss. The Plan's administrator, Aetna Life Insurance Company ("ALIC"), denied

her request for log-term benefits and affirmed the denial on appeal.

Pending now are the parties' cross-motions for summary judgment under Federal Rule of

Civil Procedure 56. Shahgholi argues that her denial of benefits was arbitrary and capricious.

She argues that she is entitled either to an award of benefits or, at minimum, a remand to ALIC

for reconsideration of her claim. Defendant, the Aetna Long-Term Disability Benefits Plan,

argues that sufficient record evidence supported ALIC's decision to deny plaintiff such benefits.

For the following reasons, the Court agrees with defendant. As a result, the Court grants

defendant's motion, denies Shahgholi's motion, and dismisses the complaint.

## I.    Background[1]

### A.    Shahgholi's Position and the Terms of the Plan

At all relevant times, Shahgholi was employed at Aetna, Inc. ("Aetna") as an International Senior Sales Executive. D. 56.1 ¶¶ 1, 3. This position consisted primarily of identifying and evaluating strategic sales opportunities, developing and maintaining client relationships, interfacing with management, and at least some travel. *Id.* ¶¶ 4–5; AR 350.

As an Aetna employee, Shahgholi was eligible to participate in the Plan—an employee benefit plan governed by ERISA. D. 56.1 ¶¶ 6–7. The Plan is self-funded by Aetna. AR 14. Under the Plan, Aetna delegated to ALIC "the discretionary authority to review and make initial and final determinations for Disability Benefits under the Plan." *Id.* at 7. ALIC maintained authority "to construe and interpret the Plan, decide all questions of eligibility, determine the status and rights of Eligible Employees and Disabled Employees, and determine the amount, manner and time of payment of any benefits." *Id.* at 8.

The Plan provides for payment of long-term disability benefits under the following terms. "Disability" is defined as "an Illness, Injury or disabling pregnancy-related condition while covered under this Plan that," as relevant here, "in the opinion of [ALIC] on the basis of information provided by an Eligible Employee's Physician and any other medical professionals with whom [ALIC] consults, causes an Eligible Employee to satisfy the test of Disability described in Section II of this Appendix." *Id.* at 17–18.

---

[1] The facts related herein are drawn primarily from the administrative record, which was filed under seal. *See* Dkt. 32 ("AR"). The Court has also relied on defendant's Local Rule 56.1 Statement, Dkt. 36 ("D. 56.1"), with which Shahgholi has "no quarrel," Dkt. 38 at 3.

Section II sets out the "test of Disability" as follows: "From the date that you first became Disabled and until monthly benefits are payable for 24 months you meet the test of Disability on any day if:

- You cannot perform the material duties of your Own Occupation solely because of Illness or Injury, and
- Your earnings are 80% or less of your Adjusted Pre-Disability Earnings.

*Id.* at 21. "After the first 24 months [of] benefits are payable, you will be deemed to be Disabled on any day if you are not able to work at any Reasonable Occupation solely because of:

- Disease; or
- Injury.

*Id.*

"Material Duties," in turn, are defined as "duties that (a) are normally required for the performance of your Own Occupation; and (b) cannot be reasonably omitted or modified." *Id.* at 19. "Own Occupation" is defined as "the occupation that you are routinely performing when your Disability begins." *Id.* The occupation "will be viewed as it is normally performed in the national economy, instead of how it is performed: [f]or your specific employer; or [a]t your location or work site; and [w]ithout regard to your specific reporting relationship." *Id.* Finally, "Illness" is defined as "a pathological condition of the body that presents a group of clinical signs and symptoms and laboratory findings peculiar to it and that sets the condition apart as an abnormal entity differing from other normal or pathological body states." *Id.*

In all events, as relevant here, long-term disability benefits terminate "on the first to occur of: The date you no longer meet the test of Disability set forth in Section II, as determined by [ALIC,] [or] [t]he date you fail to provide proof that you meet the test of Disability set forth in Section II." *Id.* at 22.

3

**B.    Shahgholi's Claim for Short-Term Disability Benefits**

On February 27, 2015, Shahgholi ceased working, with an effective first day absent of March 2, 2015.  D. 56.1 ¶ 16.  Claiming subjective tinnitus,[2] sensorineural hearing loss (unspecified),[3] and unspecified hearing loss, Shahgholi applied for short-term disability benefits under Aetna's short-term disability plan.  *Id.* ¶¶ 16–17.

On July 18, 2015, Shahgholi was awarded short-term disability for the full 25 weeks allowed under the plan, ensuring coverage until August 30, 2015.  *Id.* ¶ 17; AR 58.  She received these benefits because Aetna determined, for this period, that she "would be preclude[ed] from performing the material duties of [her] own occupation as an [international senior sales executive] which is considered sedentary and includes desk work, speaking on the phone with customers, computer work and prolonged sitting."  AR 968.  She had, Aetna concluded, "No Current Work Capacity."  *Id.*

**C.    Shahgholi's Claim for Long-Term Disability Benefits**

Meanwhile, as of June 29, 2015, ALIC had begun to review Shahgholi's disability claim under the long-term disability plan.  D. 56.1 ¶ 19.  This review included a wide array of documents and conversations, which materials the Court will now summarize.

---

[2] Tinnitus, in general, is the "annoying sensation of hearing sound when no external sound is present."  *Id.* ¶ 16 n.3 (quotation marks omitted).  Subjective tinnitus is tinnitus that only the individual can hear.  *Id.*

[3] Sensorineural hearing loss is a "form of permanent hearing loss in which it may become more difficult for a person to pick out words against background noise."  *Id.* ¶ 16 n.4 (quotation marks and alteration omitted).

In an Attending Physician Statement dated February 18, 2015 (*i.e.*, roughly one week

before Shahgholi's last day at work), Dr. Sujani Chandrasekhar, a neurotologist,[4] diagnosed

Shahgholi with "hearing loss" and "[d]isabling tinnitus." *Id.* at 85. Dr. Chandrasekhar stated

that Shahgholi was unable to sit, stand, walk, or drive, and was disabled as of February 6, 2015,

with an expected return-to-work date of March 16, 2015, some five weeks later. *Id.* at 85–86.

In a Behavioral Health Clinician Statement dated April 1, 2015, Rita Starishevsky, a

Licensed Clinical Social Worker ("CSW"), stated that Shahgholi suffered from "ringing in her

ears during the night + day," with her sleep "very impaired." *Id.* at 157. She concluded that

Shahgholi was "[n]ot able to return to work." *Id.* at 158. In another Behavioral Health Clinician

Statement, dated May 7, 2015, CSW Starishevsky stated that Shahgholi was a "very bright

previously high functioning woman who has difficulty realizing + accepting need to go on

medical disability." *Id.* at 217. She concluded again that Shahgholi could not return to work

until her symptoms abated, and estimated the end date of her disability as December 31, 2015.

*Id.* at 219, 222.

In an office visit note dated June 12, 2015, Dr. Chandrasekhar stated that Shahgholi was

"having trouble doing [her job] due to tinnitus," which caused "severely intrusive" symptoms 24

hours a day. *Id.* at 138. Nevertheless, she reported, Shahgholi had "[n]ormal communication

ability" and "[n]ormal mood with an appropriate affect." *Id.* at 140. In a Capabilities and

Limitations Worksheet dated the same day, Dr. Chandrasekhar indicated that Shahgholi could

engage in basic movements like sitting, standing, and walking only occasionally, and advised

---

[4] Neurotology is a medical specialty focused on disorders of the ear and associated parts of the brain and nervous system. *See Neuro-otology*, Mayo Clinic, https://www.mayo.edu/research/ departments-divisions/department-neurology/programs/neuro-otology (last visited August 29, 2018).

that she limit her exposure to noise. *Id.* at 154. Dr. Chandrasekhar estimated that these limitations would last until July 31, 2015. *Id.*

In a July 2, 2015 initial telephone call with Tricia Panton, an ALIC Claim Analyst, Shahgholi reported that she had suffered from tinnitus for four years. AR 1131. She indicated that the condition had worsened, such that she now experienced what sounded like a "kettle whistling all day long." *Id.* She stated she was "unable to sleep," and, as a result, "unable to concentrate." *Id.* Because she was "unable to focus," she claimed, she had "reached a point where it is keeping her job or taking care of herself." *Id.* at 1133. Nevertheless, she admitted, she could do her own grocery shopping, household chores, and personal computing. *Id.* at 1132.

In a July 9, 2015 office visit note, Dr. Chandrasekhar indicated that Shahgholi had "[n]ormal communication ability" but "decreased" hearing. *Id.* at 422. She instructed Shahgholi to engage more frequently in cognitive behavioral therapy and to "do a real trial of [hearing aids]" with or without maskers,[5] rather than "just an in-office trial." *Id.* at 423. Dr. Chandrasekhar decided to "extend [Shahgholi's] disability" to August 31, 2015, but noted that thereafter, Shahgholi would no longer be under her care, and would instead be transferred to Dr. Abraham Shulman. *Id.*

In her Attending Physician Statement dated the same day, Dr. Chandrasekhar indicated that Shahgholi was "[a]ble to work with others," yet had "[n]o ability to work," and had "[r]egressed." *Id.* at 508. She concluded that Shahgholi was to "refrain from work until" August 31, 2015. *Id.*

---

[5] Masking devices are worn in the ear and produce a continuous, low-level white noise that may suppress tinnitus symptoms. *See Tinnitus*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/tinnitus/diagnosis-treatment/drc-20350162 (last visited August 29, 2018).

On July 13, 2015, CSW Starishevsky informed ALIC that Shahgholi's condition was medical in origin, rather than psychological. *Id.* at 1144. She indicated she no longer wished to be contacted by ALIC, and that ALIC should instead follow up with Shahgholi's physicians. *Id.*

On July 29, 2015, ALIC's Behavioral Health Unit advised that it would not support a finding of long-term disability resulting from mental health impairments. *Id.* at 1152. In support, the Behavioral Health Unit cited CSW Starishevksy's opinion that Shahgholi's primary condition was physical rather than psychological. *Id.*

On August 25, 2015, Linda Mohi, a registered nurse at ALIC, conducted a Clinical Consultant Review. D. 56.1 ¶ 41. Mohi noted that Shahgholi had reported she was able to walk outside, yet there was "no report that the noise levels encountered for [such] activities are a hindrance." AR 1174–75. Given Dr. Chandrasekhar's estimate of a return-to-work date of August 31, 2015 (the same day that short-term disability benefits were due to end), Mohi concluded that "there is a lack of medical evidence for impairment to general or specific activities" following August 31, 2015. *Id.* at 1175.

On August 31, 2015, Panton, the Aetna Claim Analyst, informed Shahgholi by letter that her claim for long-term disability benefits was denied, effective August 31, 2015. *See id.* at 813–15. The letter noted that although Shahgholi reported walking outside, including to a park, there was "no report that the noise levels encountered for these activities are a hindrance due to your medical condition." *Id.* at 814. In addition, although Dr. Chandrasekhar diagnosed subjective tinnitus, sensorineural hearing loss, and anxiety disorder, an audiological test had revealed only moderate hearing loss. *Id.* Because Dr. Chandrasekhar estimated a return-to-work date of August 31, the letter determined, the "medical documentation provided does not support your inability to perform your job duties effective August 31, 2015." *Id.* The letter concluded that

Shahgholi was entitled to appeal, and that ALIC would review any additional information she cared to submit. *Id.* at 814. Such information might include "a detailed narrative for the period of August 1, 2015 through present outlining the specific physical and/or mental limitations related to your condition that your doctor has placed on you as far as gainful activity is concerned," as well as "diagnostic studies conducted during the above period." *Id.*

### D.    Shahgholi's Appeal of the Denial of Long-Term Disability Benefits

By letter dated September 19, 2015, Shahgholi appealed the decision to deny her long-term disability benefits claim. *Id.* at 385. In her letter, Shahgholi stated that her condition had "progressed to a point where I cannot perform key functions of my job." She was "unable to focus and concentrate due to profound fatigue and deep depression," and was "unable to sleep due to the loud ringing in my head 24/7." *Id.*

In support of her appeal, Shahgholi submitted a report by Dr. Shulman summarizing his July 10, 2015 initial consultation with Shahgholi, and his August 14, 2015 follow-up visit. *See id.* at 386–400. Dr. Shulman had ordered an audiological and tinnitus evaluation, as well as a functional brain imaging (or "quantitative EEG scan"), to try to determine the etiology of Shahgholi's tinnitus and the best course of treatment. The audiological evaluation took place on July 24, 2015, and found "[m]oderate flat sensorineural hearing loss bilaterally with good speech discrimination bilaterally." *Id.* at 456. The quantitative EEG took place on July 29, 2015. *Id.* at 359.

From these evaluations, as well as his own examination, Dr. Shulman hypothesized that Shahgholi's tinnitus was the result of her "gradual progressive sensorineural hearing loss." *Id.* at 398. He noted that the brain scan results lent "objective support [to] the clinical history of the tinnitus intensity and 'distress.'" *Id.* 381. Nevertheless, he concluded that he would not

8

determine Shahgholi's disability status for four to six months, so as to allow Shahgholi to try a new treatment plan including new behavioral, psychiatric, and medical interventions. *Id.* at 383–84. These included ear protection in loud spaces, use of "[e]ar planes" during flight, elimination of stimulants like caffeine, an MRI brain scan, and psychiatric or psychological evaluation and treatment. *See id.*

On September 28, 2015, Mohi, the ALIC registered nurse, performed a second Clinical Consultant Review, this time including the information Shahgholi had submitted in support of her appeal. D. 56.1 ¶ 49. Mohi concluded that nothing in the new materials "negate[d]" Dr. Chandrasekhar's estimated return-to-work date of August 31, 2015. AR 1220.

In an office visit note dated October 7, 2015, Dr. William Reisacher—a doctor Shahgholi had visited some four years previously when she first noticed symptoms of tinnitus—diagnosed Shahgholi with a "decline in hearing bilaterally" and "[l]ikely autoimmune inner ear disease." *Id.* at 330–31. He also noted that Shahgholi was "[a]ble to sleep with [sound] masking," and was "functioning during the day." *Id.* at 331.

In an October 8, 2015 Attending Physician Statement, Shahgholi's primary-care physician Dr. Lawrence Herman stated that Shahgholi had "[r]egressed," had "[n]o ability to work," and "should not work" until January 31, 2016. *Id.* at 344. Dr. Herman did not complete the attached Capabilities and Limitations Worksheet. *See id.* at 346.

On October 20, 2015, Shahgholi sent ALIC a follow-up letter. *See id.* at 342. She advised ALIC that she had met with Dr. Chandrasekhar on October 1, 2015, and that although Dr. Chandrasekhar did not wish to complete any disability forms, she "strongly believe[d]" that Shahgholi should not return to work. *Id.* She further advised that she had met with Dr. Reisacher, who also did not wish to complete long-term disability forms. *Id.* Finally, Shahgholi

stated that Dr. Herman "strongly agrees that I am fully disabled due to my anxiety, depression, sensorineural hearing loss and severe subjective disabling tinnitus," and that he therefore had agreed to complete an Attending Physician Statement extending her disability through January 2016. *Id.*

In an Attending Physician Statement dated October 20, 2015, Dr. Reisacher indicated that Shahgholi suffered from "severe disabling tinnitus." *Id.* at 340. Nevertheless, he responded "N/A" to a question seeking the dates during which "the patient will need to be absent from work due to a disability." *Id.* at 338. Further, he indicated that Shahgholi was able to work with others, work cooperatively in a group setting, and generally perform sedentary work for eight hours per day, five days per week. *Id.* at 339. She was not, however, able to "give supervision." *Id.* Any restrictions, he indicated, would remain in effect for only 30 days, beginning October 7, 2015. *Id.*

In a Behavioral Health Clinician Statement dated November 3, 2015, Dr. Bruce Friedman, a psychiatrist, stated that Shahgholi's "tinnitus leads to insomnia, which causes sleep deprivation + poor concentration + emotional function." *Id.* at 322. Although he had not "recommended that [Shahgholi] stay home from work on disability," he indicated that he "currently support[ed] [Shahgholi] being out of work," and did not specify a return date. *Id.* at 322, 324.

In an office visit note dated November 5, 2015, Dr. Dora S. Pinkhasova, a neurologist, noted that Shahgholi was "alert, awake and oriented to place, time and a person." *Id.* at 316. She noted further that Shahgholi's "[c]oncentration, calculation, short and long-term memory are preserved." *Id.* Finally, she noted that Shahgholi's "[h]earing is preserved." *Id.* This document did not address whether Shahgholi was disabled, but did note that Shahgholi was advised to

10

refrain from activities "involving excessive physical or emotional work overload prior to sleep." *Id.*

E.      **Independent Physician Reports and ALIC's Decision**

As part of ALIC's review of Shahgholi's appeal, ALIC requested that independent physician peer reviews be performed in the specialty areas of psychology and otolaryngology.[6] D. 56.1 ¶ 61. Accordingly, Dr. Alan F. Lipkin, M.D., an otolaryngologist, and Dr. Peter A. Mosbach, Ph.D., a psychologist, each provided reviews of the medical documentation Shahgholi provided.

By report dated January 5, 2016, Dr. Lipkin concluded that, based on the available records, Shahgholi had "no functional impairments from 03/02/2015 through 01/08/2016 requiring restrictions or limitations." AR 311. "Strictly from the viewpoint of otolaryngology/neurotology, the claimant has tinnitus and sensorineural hearing loss that have not responded well to medical therapy, but should not lead to a functional impairment requiring restrictions or limitations." *Id.* "Subjective tinnitus," Dr. Lipkin explained, "as experienced by [Shahgholi], although bothersome, is not generally an issue that precludes all ability to work." *Id.* Dr. Lipkin then observed that, "[d]uring the entire period in question, the claimant has no restrictions on her ability to sit, stand, pull, push, and carry any given amount of weight. The reported issues of emotional control, focus and cognition are subjective, can be affected by tinnitus, but can't be quantified and are not supported to be requiring restrictions or limitations." *Id.* Accordingly, Dr. Lipkin "disagree[d]" with Drs. Chandrasekhar and Herman that Shahgholi should refrain from work, as the identified "otolaryngology issues do not justify these

---

[6] Otolaryngology is the study of diseases of the ear and throat. *See Otolaryngology (n.)*, New Oxford American Dictionary, https://premium.oxforddictionaries.com/definition/english/ otolaryngology (last visited August 29, 2018).

restrictions." *Id.* Rather, Dr. Lipkin noted that Dr. Reisacher had concluded that Shahgholi was "capable of sedentary work," and "[t]here is no information that would restrict the strength level to sedentary in the forwarded records." *Id.* Further, Dr. Lipkin observed, Shahgholi had not "taken steps, such as use of hearing aid/maskers, which might lead to improvement in her condition." *Id.*

Notwithstanding the foregoing, Dr. Lipkin declined to evaluate the import of the quantitative EEG, as such an assessment was "out of [his] area of expertise." *Id.* at 310. Likewise, he declined to consider Shahgholi's "ability to concentrate/focus on tasks," which is "difficult for an otolaryngologist to quantify and is deferred to the appropriate specialty." AR 312.

By report dated January 7, 2016, Dr. Mosbach concluded that, "[o]verall, the submitted medical records did not provide evidence that the claimant had impairment in the ability to carry out her usual activities of daily living from a cognitive or mental health perspective." *Id.* at 302. In particular, he stated, there were no "clinical test results that were reported in the medical records that documented impairment in cognitive functioning." *Id.* at 302–03. Although Dr. Herman described Shahgholi as having difficulty concentrating, "no evidence of impairment in concentration was provided." *Id.* at 302. At bottom, he concluded that there was no evidence of "psychiatric or cognitive factors [that] would prevent her from sustaining activities eight hours a day consecutively," or any evidence of "impairment in the ability to focus on assignments or interact with customers or others." *Id.* at 303.

By letter dated January 7, 2016, Kim Grinis, an ALIC Appeal Specialist, informed Shahgholi that the decision to deny her claim for benefits, effective August 31, 2015, had been

upheld on appeal.  Because this decision is quite significant to the disposition of this case, the

Court quotes the letter at length:

> The submitted records indicate that you have tinnitus and sensorineural hearing loss. Although it is noted that you have not responded well to medical therapy, there is no clinical correlation for functional impairment that would require restrictions and limitations.
>
> You reported experiencing anxiety and depression, as well as problems concentrating.  Panic attacks were all noted.  However, there were no significant clinical findings to support functional impairment from a mental health perspective and no cognitive testing or evidence to substantiate cognitive deficits or impairment in your cognitive functioning.
>
> We determined that there is insufficient clinical evidence to support functional impairment, from a physical or a mental health/cognitive perspective, that would restrict and/or limit your ability to perform the duties of your own occupation as of August 31, 2015.
>
> We also had an independent doctor who specializes in neurotology/otolaryngology, as well as an independent consultant specializing in neuropsychology/psychology review the information.  We've written a summary of the doctor[s'] review below.
>
> The reviewer specializing in neurotology/otolaryngology concluded based on the review of the submitted records that there is no supportive clinical evidence for any functional impairment due to tinnitus and/or sensorineural hearing loss during the period under review.  Severe tinnitus can affect the ability to concentrate/focus on tasks, but cannot be quantified from an otolaryngology standpoint.  The tinnitus and hearing loss do not lead to functional limitations in terms of strength and activity.  You have hearing loss that is not currently being treated with hearing aids/amplification. To date, your tinnitus has not been treated with a trial of amplification/masking, which has been recommended, aside from an office demonstration.  Subjective tinnitus as reported can be bothersome, but not generally an issue that precludes all ability to work.  There is no clinical information that would restrict [y]our strength level to sedentary in the records provided.
>
> The reviewer specializing in neuropsychology/psychology concluded that there is no evidence of restrictions or limitations

from a cognitive or mental health perspective. There are no significant findings to support that your anxiety and depression are severe enough during the period under review to cause impairment. There is no indication of memory loss. Your concentration, calculation, as well as short and long-term memory were preserved. Your judgment and affect are intact. There is no evidence that you had difficulty communicating when you were seen by your treating providers. There was no clinical evidence of impairment in cognitive or memory functioning. You were never administered any neuropsychological testing. The results of the mini-mental status exam were not provided. Although you report problems with anxiety, depression, and concentration associated with your tinnitus, the records do not provide evidence of functional impairment from a cognitive or mental health perspective.

*Id.* at 831–32.

## II.     Procedural History

On February 9, 2017, Shahgholi filed the complaint in this action. Dkt. 1. On April 14, 2017, the Plan filed its answer. Dkt. 9.

On November 30, 2017, Shahgholi filed a motion for summary judgment, Dkt. 28, along with a memorandum of law in support, Dkt. 29 ("Shahgholi Br."). On December 12, 2017, with leave of the Court, the parties filed the administrative record under seal. Dkt. 32. On January 5, 2018, the Plan filed a cross-motion for summary judgment, Dkt. 33, as well as the Declaration of Lori A. Medley, Dkt. 34, a memorandum of law in support, Dkt. 35 ("Plan Br."), a Local Rule 56.1 Statement, Dkt. 36, and a counter-statement to Shahgholi's Local Rule 56.1 Statement, *see* Dkt. 37.

On February 2, 2018, Shahgholi filed an opposition brief. Dkt. 38 ("Shahgholi Opp."). On March 9, 2018, the Plan filed its reply brief. Dkt. 39.

## III.    Applicable Legal Principles

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

14

law." Fed. R. Civ. P. 56(a). In reviewing a plan's benefits decision, however, a court's review is limited to the administrative record, as to which there is no factual dispute here. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). Accordingly, the question presented by the parties' cross-motions is whether ALIC's denial of disability benefits should be sustained as a matter of law.

A denial of benefits under ERISA is reviewed *de novo* unless, as here, "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Because the parties here agree that ALIC has such discretionary authority, the Court applies "a more deferential standard, seeking to determine only whether the administrator's decision was 'arbitrary and capricious.'" *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 485 (2d Cir. 2013) (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 145 (2d Cir. 2003)).

"A decision is arbitrary and capricious only if it is found to be without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 486 (quotation marks omitted). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." *Durakovic v. Building Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010) (quotation marks omitted). "This scope of review is narrow; thus, we are not free to substitute our own judgment for that of the insurer as if we were considering the issue of eligibility anew." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83–84 (2d Cir. 2009) (quotation marks and alterations omitted).

As part of this analysis, the Court may consider as a factor the fact that, as here, the administrator "both evaluates and pays claims," and therefore operates under a conflict of interest. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 110 (2008). But "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic*, 609 F.3d at 140. Here Shahgholi has not adduced any evidence that ALIC's conflict of interest affected its decision, either in a "categorical" or "case[-]specific" sense. *Id.*; *see also* Shahgholi Br. 12 (arguing that "review of Aetna's decision should be tempered by Aetna's conflict of interest" merely because "the Plan is self-funded by Aetna"). Further, the Plan represents—without challenge by Shahgholi—that it has taken "active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances." *Glenn*, 554 U.S. at 117; *see* D. 56.1 ¶¶ 67–83. Accordingly, the Court considers the conflict here to be of "vanishing" significance. *Durakovic*, 609 F.3d at 140 (quoting *Glenn*, 554 U.S. at 117).

IV.    **Discussion**

Shahgholi raises two primary objections to her denial of long-term disability benefits. First, she argues, ALIC's decision was arbitrary and capricious because it failed to give proper attention to her subjective complaints. Second, she argues, ALIC's reliance on the opinions of independent reviewers was arbitrary and capricious because their reports were unreliable and error-filled. The Court will address each argument in turn.

A.    **Attention to Shahgholi's Subjective Complaints**

It is well settled that "subjective complaints of disabling conditions are not merely evidence of a disability, but are an important factor to be considered in determining disability." *Miles*, 720 F.3d at 486 (quotation marks omitted). "Thus, a reviewing court is obliged to determine whether a plan administrator has given sufficient attention to the claimant's subjective

16

complaints before determining that they were not supported by objective evidence." *Id.* (quotation marks and alterations omitted).

Relying chiefly on an analogy to *Miles v. Principal Life Insurance Co.*, 720 F.3d 472 (2d Cir. 2013), Shahgholi argues that ALIC "clearly failed to 'assign any weight' or 'provide specific reasons for its decision to discount' Ms. Shahgholi's subjective complaints[,] which were wholly supported by the findings of her treating physicians and objective testing." Shahgholi Br. 16. Rather than support her challenge, however, the analogy to *Miles* illuminates its shortcomings.

In *Miles*, a law firm partner claimed that he had been forced to stop working due to tinnitus, head pain, and a feeling of disorientation. *See* 720 F.3d at 475–76. Principal, Miles's insurer, initially denied him long-term disability benefits because "there is no clinical documentation . . . that clearly states any significant severe functional limitations that would have prevented [him] from returning back to [his] regular job." *Id.* at 480 (quotation marks and alterations omitted). Principal notified Miles that, if he wished to file an appeal, he could provide, *inter alia*, "testing to support the severity of [his] condition/conditions" and "an explanation from his treating doctors outlining upon what medical basis they would support [his] inability to perform [his] occupation." *Id.* at 481 (quotation marks omitted).

Miles appealed, and produced further evidence to support his claim. This evidence included reports from several doctors who described Miles's tinnitus as both unmeasurable and a significant impediment to his ability to work. *Id.* at 482. An independent specialist reviewed Miles's file and noted that although Miles suffered from hearing loss and tinnitus, there appeared to be no "*physical* limitations or restrictions." *Id.* at 484 (quotation marks omitted). Another noted that Miles's "self-reported complaints cannot be explained by any known neurological condition." *Id.* (quotation marks omitted). Principal thereafter denied Miles's claim on appeal,

stating, among other things, that Miles's complaints "were never observed by his neurologist and were never confirmed by exams," and that his "self-reported loss of orientation and concentration was never verified by objective testing and remained self-reported only." *Id.* at 487 (quotation marks and alterations omitted).

Following a bench trial in which the district court upheld the plan administrator's decision, the Second Circuit reversed and remanded the case to the plan administrator to reassess Miles's application. As relevant here, the Second Circuit rejected Principal's analysis on two grounds. First, the Circuit held, Principal impermissibly discounted Miles's subjective evidence that he suffered from tinnitus without providing "specific reasons" to justify that decision. Second, Principal impermissibly required Miles to produce objective evidence that he suffered from tinnitus—a condition for which objective evidence may not exist—without "specifying the objective evidence it would expect to see." *See Miles*, 720 F.3d at 487–89.

These critiques do not apply to ALIC's decision here. First, ALIC never disputed that Shahgholi suffers from tinnitus. On the contrary, ALIC conceded that she suffered from both tinnitus and sensorineural hearing loss. *See AR* 831. Second, ALIC acknowledged Shahgholi's subjective reports of "anxiety and depression, as well as problems concentrating." *Id.* Rather than dismiss these reports as "merely subjective"—or fail to address them at all, *see Valentine v. Aetna Life Ins. Co.*, 125 F. Supp. 3d 425, 443 (E.D.N.Y. 2015)—ALIC considered Shahgholi's subjective complaints arising from her conceded medical conditions.

Proceeding from this premise, ALIC concluded that Shahgholi nevertheless had not adduced sufficient evidence of an inability to perform her job duties. *See AR* 831–32. What was lacking, in other words, was not "objective proof of tinnitus," *Miles*, 720 F.3d at 488, but objective proof of *functional impairment*, *see AR* 831. That ALIC would require such proof in

assessing her claim of long-term impairment was no secret; ALIC had previously notified Shahgholi that it would expect to see medical documentation concerning her functional impairment. *See* AR 814 (informing Shahgholi in its initial denial that the "medical documentation provided does not support your inability to perform your job duties," and informing her that ALIC would review, if she cared to submit, a "detailed narrative . . . outlining the specific physical and/or mental limitations related to your condition that your doctor has placed on you as far as gainful activity is concerned"). Under these circumstances, the Second Circuit has repeatedly held that it is reasonable for a plan administrator to require objective evidence of impairment. *See, e.g.*, *Hobson*, 574 F.3d at 88 ("[I]t is not unreasonable for ERISA plan administrators to accord weight to objective evidence that a claimant's medical ailments are debilitating in order to guard against fraudulent or unsupported claims of disability . . . . MetLife acted within its discretion in requiring some objective evidence that Hobson was disabled from performing in a sedentary capacity."); *see also, e.g.*, *Ianniello v. Hartford Life & Accident Ins. Co.*, No. 10-CV-370(SJF)(ARL), 2012 WL 314872, at *3 (E.D.N.Y. Feb. 1, 2012) ("It was plaintiff's burden to demonstrate her disability under the terms of the plan, and it was reasonable for Hartford to require objective evidence to support her alleged physical limitations."), *aff'd*, 508 F. App'x 17 (2d Cir. 2013); *Schnur v. CTC Commc'ns Corp. Grp. Disability Plan*, No. 05 Civ. 3297(RJS), 2010 WL 1253481, at *14 (S.D.N.Y. Mar. 29, 2010) ("[I]t is not unreasonable for a plan administrator to require [objective] evidence so long as the claimant was so notified. [E]ven for diseases and disorders with difficult etiologies and subjective symptoms, a distinction exists between the amount of fatigue or pain an individual experiences, which is completely subjective, and how much an individual's degree of pain or fatigue limits his functional

capabilities, which can be objectively measured." (quotation marks and citation omitted)), *aff'd*, 413 F. App'x 377 (2d Cir. 2011).

Further, ALIC's conclusion here was supported by substantial evidence. As of August 31, 2015, the effective date of ALIC's initial denial and the date that Shahgholi's short-term disability benefits were set to expire, the record evidence indicated that Shahgholi was capable of "[n]ormal communication" with her physicians despite "decreased" hearing, AR 422, and that she was "[a]ble to work with others," though not "cooperatively . . . in [a] group setting," *id.* at 508. Shahgholi herself had indicated that she was able to do her own grocery shopping and other activities of daily living, notwithstanding her hearing the sound of a "kettle whistling all day long." *Id.* at 1131–32. And although Dr. Chandrasekhar had noted that "tinnitus prevents [Shahgholi] from focusing at work," *id.* at 227, she had also indicated that she expected Shahgholi to return to work on August 31, 2015, *id.* at 508. Indeed, as of the time of ALIC's initial denial of long-term disability benefits, *none* of Shahgholi's physicians had indicated that she would not be able to return to work.[7] Given that Shahgholi bore the burden of establishing her eligibility for long-term disability benefits, *see Ianniello v. Hartford Life & Accident Ins. Co.*, 508 F. App'x 17, 21 (2d Cir. 2013), ALIC's initial denial was neither arbitrary nor capricious.[8]

---

[7] Clinical social worker Starishevsky had indicated that Shahgholi should remain on disability leave through December 31, 2015. *See id.* at 222. On July 13, 2015, however, Starishevsky informed ALIC that Shahgholi's condition was medical in origin, and that she would no longer support Shahgholi's disability claim. *See id.* at 1144.

[8] The Court notes that Shahgholi had previously received short-term disability benefits under what appears to be a similar standard, *see id.* at 1374, and little evidence suggested that her condition had materially improved by August 31, 2015. Nevertheless, there is no argument here that the provision of short-term disability benefits restricted ALIC's discretion in determining Shahgholi's eligibility for long-term disability benefits.

ALIC's decision to uphold this denial on appeal was reasonable as well. To be sure, Dr. Herman—Shahgholi's primary-care physician—stated on October 8, 2015 that Shahgholi had "no ability to work" and "should not work" until January 31, 2016. *Id.* at 344. But no other physician was willing to support this conclusion, and Shahgholi had asked several. *See id.* at 342 (Shahgholi's October 20, 2015 letter citing Drs. Chandrasekhar's and Reisacher's refusal to attest to her ongoing disability). That none of her treating doctors found her to be disabled between August 31 and September 30, 2015 did not necessarily require denial of her claim. *Contra* Plan Br. 13–15. A reasonable administrator might have determined that the one-month gap in Shahgholi's physicians' assessment of her disability was attributable not to the absence of a disability but rather to the fact that Shahgholi was transitioning between two neurotological specialists, and discounted that gap as of little moment. Nevertheless, the fact that no physician reported the existence of a disability during this period reasonably supported a finding that Shahgholi was not disabled.

ALIC's determination also found ample support in Shahgholi's medical submissions, of which several tended to controvert Shahgholi's claim of disability. Dr. Reisacher, for instance, noted that Shahgholi was "functioning during the day," and could generally perform sedentary work for eight hours per day, five days per week. *Id.* at 331, 339.[9] Dr. Pinkhasova, likewise,

---

[9] Although the record is not entirely clear, it appears that the "physical demand level" of Shahgholi's position was "light," rather than "sedentary." *See* Shahgholi Br. 22; *see also* AR 297, 1168. Relative to "sedentary" work, "light" work is characterized by the patient's ability to exert greater physical force and to walk or stand for longer periods of time. *See, e.g.,* AR 339. Shahgholi acknowledges that "the primary reason she could no longer perform her occupation of international senior sales executive was an inability to concentrate and focus due to the severe ringing in her ears." Shahgholi Opp. 9–10. She does not explain how those conditions restricted her physical strength and mobility. Accordingly, Dr. Lipkin appears correct that there is no basis in the record for drawing a distinction between Shahgholi's ability to engage in sedentary work and her ability to engage in light work. *See id.* at 311.

found that Shahgholi's "[c]oncentration, calculation, short and long-term memory," and "hearing" were "preserved." *Id.* at 316. Even Dr. Shulman, on whose report Shahgholi relies heavily, refused to conclude upon two in-person examinations that Shahgholi was disabled. Thus, even if certain submissions were perhaps consistent with a finding of disability after August 31, 2015, the assembled record assuredly did not compel such a finding. On the deferential standard of review appropriate here, the existence of a plausible finding of disability is not enough to overturn a plan administrator's decision. *Hobson*, 574 F.3d at 89 ("[T]he question for this court is not whether MetLife made the 'correct' decision but whether MetLife had a reasonable basis for the decision that it made." (quotation marks and alteration omitted)). Accordingly, given the standard of review, ALIC's determination is properly upheld.

B.    **The Independent Reviewers**

Shahgholi raises two arguments as to why ALIC should not have relied on the reports of the independent reviewers. First, she argues, the opinions of non-examining physicians are particularly unreliable when the claimant's condition is inherently subjective. Shahgholi Br. 19–22. Second, she argues, the reviewers' reports were unreliable because they are inconsistent with the record, conclusory, and error-filled. *Id.* at 22–24; Shahgholi Opp. 4–7. The Court addresses each argument in turn.

As to the first, ALIC had no obligation to favor the conclusions of any of Shahgholi's treating physicians over those of the independent reviewers. It is well established that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

To be sure, "due weight should be given to the treating physician[s'] findings" where "the chief symptoms of the illnesses are subjective." *Diamond v. Reliance Standard Life Ins.*, 672 F. Supp. 2d 530, 537 (S.D.N.Y. 2009). But ALIC did give due weight to the reports of Shahgholi's treating physicians, who were far from unanimous as to her disability. Each of ALIC's independent reviewers canvassed the documentation Shahgholi provided and, in several instances, engaged directly with the findings of her treating physicians. *See, e.g.*, AR 302 (Dr. Mosbach explaining his disagreement with Dr. Herman); *id.* at 311 (Dr. Lipkin explaining his disagreement with Drs. Chandrasekhar and Herman). Likewise, in its final denial letter, ALIC summarized the independent physicians' reviews of the documentation Shahgholi had submitted. *See id.* at 831–32. Accordingly, ALIC acted well within its discretion in relying on the independent physician reports, notwithstanding the subjective nature of some of her symptoms.[10]

In her second argument, Shahgholi nominally attacks the reliability of the independent physician reports themselves. However, aside from the conclusory argument that the reports are "inconsistent with the entirety of the record," Shahgholi Br. 24—an argument interred by the analysis in Part IV.A. above—Shahgholi offers particularized criticism of only Dr. Lipkin's report, *see id.* at 22–24; Shahgholi Opp. 4–7. This framing is revealing: The primary shortcomings Shahgholi identifies in Dr. Lipkin's report are precisely those to which Dr. Mosbach's report are most responsive. Accordingly, there is no genuine dispute here as to

---

[10] To the extent that Shahgholi argues that ALIC's decision not to request an in-person examination rendered the denial of benefits arbitrary and capricious, the Court rejects that argument as well. Where, as here, "the ERISA plan administrator retains the discretion to interpret the terms of its plan, the administrator may elect not to conduct an [independent medical examination], particularly where the claimant's medical evidence on its face fails to establish that she is disabled." *Hobson*, 574 F.3d at 91.

whether ALIC received the benefit of detailed and comprehensive independent physician reports to aid its long-term disability determination.

In brief, Shahgholi's main objection to Dr. Lipkin's report is that he offered only "broad conclusory statements about whether tinnitus is generally disabling." Shahgholi Opp. at 5. To wit, Dr. Lipkin observed that tinnitus and sensorineural hearing loss "should not lead to a functional impairment" and that tinnitus "is not generally an issue that precludes all ability to work." AR 311–12. Whatever the empirical accuracy of these remarks—a matter outside the record on which the Court does not opine—Dr. Lipkin ultimately "deferred to the appropriate specialty" whether and to what extent Shahgholi's tinnitus affected her "ability to concentrate/focus on tasks." AR 312.

Had ALIC relied on this report alone to conclude that Shahgholi's ability to concentrate was not impaired, such a decision might have been arbitrary and capricious. Instead, however, ALIC relied on the equivocal record evidence and the report of Dr. Mosbach, which squarely addressed Shahgholi's alleged inability to focus. As relevant here, Dr. Mosbach systematically reviewed Shahgholi's medical records. He concluded that "the submitted medical records did not provide evidence that [Shahgholi] had impairment in the ability to carry out her usual activities of daily living from a cognitive or mental health perspective." *Id.* at 302. In particular, he concluded, "[t]here was no evidence of impairment in the ability to focus on assignments or interact with customers or others." *Id.* at 303. As explained above, this conclusion was supported by substantial evidence in the record. Because Dr. Mosbach provided the kind of "detailed, substantive analysis" sufficient to support a denial of long-term disability benefits,

*Hobson*, 574 F.3d at 85, it was not arbitrary and capricious for ALIC to rely on his opinion in assessing the impact of Shahgholi's alleged inability to focus.[11]

## CONCLUSION

For the foregoing reasons, defendant's motion is granted and Shahgholi's motion is denied. The Clerk of Court is respectfully directed to terminate all pending motions and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: August 30, 2018
      New York, New York

---

[11] Shahgholi also suggests that because neither reviewer addressed her quantitative EEG examination, ALIC never considered the significance of that test. *See* Shahgholi Br. 23. It is far from clear that ALIC did not consider this evidence. *See, e.g.*, AR 1222, 1226 (ALIC internal work notes discussing this exam). In any event, even assuming *arguendo* that ALIC utterly ignored the test, Shahgholi can hardly claim prejudice: She offers no argument that consideration of this test would have compelled the conclusion that she was functionally impaired. Indeed, even Dr. Shulman, who ordered the test and allowed that it supported "the clinical history of the tinnitus intensity and 'distress,'" declined to deem Shahgholi disabled. *See id.* at 381, 384.